# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| WETRO LAN LLC, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § Case No. 2:15-cv-421-RSP |
| | § |
| PHOENIX CONTACT USA INC., | § |
| | § |
| Defendant. | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Phoenix Contact USA Inc.'s Motion to Dismiss Under to Rule 12(b)(6) for Failure to Allege Infringement of a Claim that is Patentable under 35 U.S.C. § 101. (Dkt. No. 11.) The Court has considered the arguments and finds Phoenix's Motion to Dismiss (Dkt. No. 11) is **DENIED** because claim construction is necessary to determine patent-eligibility. Phoenix may re-raise its patent-eligibility arguments after the Court has construed the disputed terms.

## BACKGROUND

Plaintiff Wetro Lan LLC owns U.S. Patent No. 6,795,918. At a high level, the '918 patent is directed to "filtering data packets by providing non-user configurable authorization data." ('918 patent, at [57].) Phoenix asserts claim 1 "is representative of the claims of the '918 patent." (Dkt. No. 11 at 2–3.)

Claim 1 describes:

> 1. A method for filtering a plurality of data packets, the method comprising:
>
> receiving a data packet from the plurality of the data packets, the received data packet having source, destination, and protocol information;
>
> extracting the source, destination, and protocol information from the received data packet;

providing the extracted information to a non-user configurable decision block, the decision block including information on which services are authorized depending on the extracted information, the non-configurable decision block being substantially free from user adjustment;

dropping the received data packet if the extracted information indicates a request for access to an unauthorized services; and

permitting the received data packet to go through if the extracted information indicates a request for access to an authorized service,

wherein the protocol information includes information about transport types.

('918 patent col. 8, ll. 18–39.)

Wetro, in contrast, asserts claim 10 is representative of the claims in '918 patent. (Dkt. No. 15 at 4.) Claim 10 recites:

10. A computer security apparatus comprising: a first communication interface coupled to a public network, the first communication interface configured to receive data from the public network, the public network data including a plurality of data packets:

a packet analyzer coupled to the first communication interface, the packet analyzer configured to receive and analyze the data packets from the public network, the packet analyzer including;

a protocol storage device coupled to the first communication interface, the protocol storage device configured to store communication protocol information associated with a first data packet from the plurality of the received data packets;

a source port storage device coupled to the protocol storage device, the source port storage device configured to store source port information associated with the first data packet;

a destination port storage device coupled to the source port storage device, the destination port storage device configured to store destination port information associated with the first data packet, and

a lookup table device coupled to the protocol storage, the source port storage, and the destination port storage devices, the lookup table configured to determine based on the data within the first data packet whether the first data packet should be authorized to be transferred through the computer security apparatus; and

a second communication interface coupled to a private network and the packet analyzer, the second communication interface configured to receive the authorized data from the packet analyzer for sending to the private network;

wherein the packet analyzer only permits data packets for a selected group of Internet services to be transferred to the private network and the lookup table device is non-configurable by a computer user, and the communication protocol information includes information about transport types.

('918 patent col. 8, l. 60–col. 9, l. 33.)

## RULE 12(b)(6) STANDARD

Rule 8(a) requires "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) permits a party to move to dismiss a claim if the pleader does not meet the conditions of Rule 8(a) and "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court considering a Rule 12(b)(6) motion must assume all well-pled facts are true and view them in a light most favorable to the non-moving party. *See Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). The Court must decide if those facts state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby*, 681 F.3d at 217 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ELIGIBILITY UNDER 35 U.S.C. § 101

Section 101 of the Patent Act defines what is eligible for patent protection. It states: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

The Supreme Court has held there are three exceptions to patent eligibility under § 101: laws of nature, natural phenomena and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1296–97 (2012), the Supreme Court set out a two-step test for distinguishing patents that claim laws of nature, natural phenomena and abstract ideas from those that claim patent-eligible applications of those concepts.

The first step of *Mayo* requires a court to determine if the claims are directed to a law of nature, natural phenomena or abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *See id.* at 714 ("We first examine the claims because claims are the definition of what a patent is intended to cover."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental . . . practice long prevalent in our system . . . .'" (quoting *Alice*, 134 S. Ct. at 2356)).

For example, in *Bilski*, the Supreme Court rejected as patent-ineligible "[c]laims 1 and 4 in petitioners' application" because the claims just "explain[ed] the basic concept of hedging, or protecting against risk." *Bilski*, 561 U.S. at 611. Similarly, in *Ultramercial*, the United States Court of Appeals for the Federal Circuit rejected as patent-ineligible a claim that described "eleven steps for displaying an advertisement in exchange for access to copyrighted media." *Ultramercial*, 772 F.3d at 714. In *Intellectual Ventures*, the Federal Circuit rejected as patent-ineligible a claim that recited components that "relate[d] to customizing information based on (1)

information known about the user and (2) navigation data." *Intellectual Ventures I*, 792 F.3d at 1369.

A court applies the second step of *Mayo* only if it finds in the first step that the claims are directed to a law of nature, natural phenomena or abstract idea. *Alice*, 134 S. Ct. at 2355. The second step requires the court to determine if the elements of the claim individually, or as an ordered combination, "transform the nature of the claim" into a patent-eligible application. *Id*. In determining if the claim is transformed, "[t]he cases most directly on point are *Diehr* and *Flook*, two cases in which the [Supreme] Court reached opposite conclusions about the patent eligibility of processes that embodied the equivalent of natural laws." *Mayo*, 132 S. Ct. at 1298; *see Alice*, 134 S. Ct. at 2355 ("We have described step two of this analysis as a search for an 'inventive concept.'").

In *Diehr*, the Court "found [that an] overall process [was] patent eligible because of the way the additional steps of the process integrated [an] equation into the process as a whole." *Mayo*, 132 S. Ct. at 1298 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1918)); *see Mayo*, 132 S. Ct. at 1299 ("It nowhere suggested that all these steps, or at least the combination of those steps, were in context obvious, already in use, or purely conventional."). In *Flook*, the Court found that a process was patent-ineligible because the additional steps of the process amounted to nothing more than "insignificant post-solution activity." *Diehr*, 450 U.S. at 191–92 (citing *Parker v. Flook*, 437 U.S. 584, 590 (1978)).

A claim may become patent-eligible when the "claimed process include[s] not only a law of nature but also several unconventional steps . . . that confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("In particular, the '399 patent's claims address the

problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink."). A claim, however, remains patent-ineligible if it describes only "'[p]ost-solution activity' that is purely 'conventional or obvious.'" *Mayo*, 132 S. Ct. at 1299.

## ANALYSIS

**Representative Claims**

Phoenix states claim 1 of the '918 patent is representative of all the independent claims in the '918 patent. (Dkt. No. 11 at 2–3.) Phoenix contends claim 1 shows the claims in the '918 patent are "directed to nothing more than the ubiquitous and abstract concept of securing access against unwanted and harmful intrusion to a computer on a communication network." (Dkt. No. 11 at 11.) Wetro disagrees that claim 1 is representative. (Dkt. No. 15 at 4–5.) Wetro argues that claim 10 is representative and that the claim is "similar" to the other independent apparatus claims in the '918 patent. (Dkt. No. 15 at 4.) Wetro further argues the independent method claims are similar to each other and that "[c]laim 1 describes the method that the apparatus in claim 10 is designed to perform." (Dkt. No. 15 at 4–5.)

The Court finds that neither party has identified a representative claim. The '918 patent recites five independent claims which are directed at both methods and apparatuses. The limitations of the claims plainly show that the method and apparatus claims are of different scope. For example, method claim 1 contains limitations that require "receiving a data packet" and "extracting the source, destination, and protocol information from the received data packet." ('918 patent col. 8, ll. 20–25.) Method claim 1 recites no limitations that describe the process of "extracting" the "source, destination, and protocol information." Apparatus claim 10, on the

- 6 -

other hand, recites limitations that require certain structures. Claim 10 states "data packets" must be stored in "a protocol storage device . . . configured to store communication protocol information," "a source port storage device . . . configured to store source port information," and "a destination port storage device . . . configured to store destination port information." ('918 patent col. 8, l. 60–col. 9, l. 33.) The parties have not shown that claims with these disparate limitations are representative of each other. In sum, the parties have not persuaded the Court that either claim 1 or claim 10 is representative, but the Court will analyze whether claim 1 is patent-ineligible, as Phoenix has addresses in its motion.

**Patent-Eligibility of Claim 1**

Phoenix asserts claim 1 is directed to the abstract concept of "securing access against unwanted and harmful intrusion to a computer on a communication network." (Dkt. No. 11 at 11.) Phoenix states claim 1 of the '918 patent does not contain an inventive concept that is "significantly more" than an abstract idea. (*See* Dkt. No. 11 at 11); *Alice*, 134 S. Ct. at 2355. Wetro responds by explaining that claim construction is necessary, and even if it is not, claim 1 satisfies the machine-or-transformation test and does not preempt any technological field. (*See* Dkt. No. 15 at 1–2.)

The Court finds that claim construction is necessary to determine if claim 1 of the '918 patent is patent-eligible. Claim construction assists in resolving this dispute because Wetro contends that under its construction the "non-configurable" and "non-user configurable" limitations add an "inventive concept" to the claims. (*See* Dkt. No. 15 at 18.) Wetro has proposed a construction of "non-configurable" through its expert witness. (Dkt. No. 15-1 at 2–3 (construing "non-configurable" as "the user does not have to adjust settings on the present device and/or the computer on the protected local area network, wide area network, or private

network").) Phoenix has not responded with specificity. (Dkt. No. 18 at 3.) The Court agrees with Wetro that construing these terms will assist the Court in determining whether the claim are direct to improvements in computer technology. *See DDR Holdings*, 954 F. Supp. 2d at 527 ("'[I]nventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract' as to be ineligible for patent protection.").

## CONCLUSION

For the reasons stated above, the Court finds Phoenix has not shown claim 1 of the '918 patent is directed to patent-ineligible subject matter. Wetro's complaint has not failed to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Phoenix's Motion to Dismiss (Dkt. No. 11) is **DENIED**. Phoenix may re-raise its § 101 arguments after claim construction.

**SIGNED this 29th day of March, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE